IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RONNIE LEE RAYLE, II, | ) CASE NO. 3:25-CV-00096-JJH |
| | ) |
| Plaintiff, | ) JUDGE JEFFREY J. HELMICK |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) CARMEN E. HENDERSON |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant, | ) REPORT & RECOMMENDATION |
| | ) |

**I. Introduction**

Plaintiff, Ronnie Lee Rayle, II ("Rayle" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On September 14, 2020, Claimant filed an application for DIB, alleging a disability onset date of July 1, 2020. The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). After hearings held March 3 and May 16, 2022, the ALJ issued a written decision finding Claimant was not disabled. Following a denial from the Appeals Council, Claimant appealed the decision to the United States District Court for the Northern District of Ohio. On February 29, 2024, the Court remanded the matter.

Consistent with the Court's order of remand, the Appeals Council vacated the ALJ's decision and remanded Claimant's case to a new ALJ for resolution, in relevant part, of the following issue:

> The hearing decision does not contain an adequate evaluation of the opinion provided by Michael Wuebker, Ph.D., a consultative examiner. The decision (page 19) indicates that Dr. Wuebker's opinion is generally persuasive; however, he opined, in relevant part, that the claimant would be expected to understand and apply instructions for one step workplace instructions (Exhibit B4F, page 7). The residual functional capacity in the decision does not include this limitation and the decision does not provide rationale for why the limitation was not persuasive. If the Administrative Law Judge finds a residual functional capacity that conflicts with an opinion from a medical source, the decision must explain why the opinion was not adopted (Social Security Ruling 96-8p). As this portion of the opinion is more restrictive than the residual functional capacity noted in the decision, further evaluation of Dr. Wuebker's opinion is necessary.

Upon remand the Administrative Law Judge will:

> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the medical source opinion of Dr. Wuebker pursuant to the provisions of 20 CFR 404.1520c. As appropriate, the Administrative Law Judge may request the medical source provide additional evidence and/or further clarification of the opinion (20 CFR 404.1520b).

(ECF No. 8, Tr. at 1568-1569). On August 22, 2024, Claimant appeared with his representative and testified before the ALJ. On November 19, 2024, the ALJ issued a decision, again finding Claimant not disabled.

On January 20, 2025, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos.10 and 12). Claimant asserts the following assignment of error:

> In evaluating Dr. Wuebker's mental health opinion, the ALJ failed to comply with SSR 96-8p. The ALJ committed the identical error for which this case was originally remanded: she failed to follow the Appeals Council's remand order to explain why Dr. Wuebker's "one step workplace instructions" limitation was not adopted in the RFC despite finding Dr. Wuebker's opinion "somewhat consistent and supported by the overall record."

2

(ECF No. 10 at 1).

### III. Background

#### A. Mental Health Record

The ALJ summarized Claimant's mental health record as follows:

> Turning to his mental health, as noted above, the claimant has been on medications to treat anxiety and depression, prescribed by his primary care provider for several years. Treatment records consistently show that the claimant's mood and affect are objectively assessed as normal/appropriate, and his mental status is normal (B2F/10, B3F; B5F/30, 108, B6F, B9F/164 & B11F).
>
> On January 12, 2021, the claimant underwent a consultative psychological evaluation by Michael J. Wuebker, Ph.D. (B4F). He described an inability to work due to feeling light-headed and not being able to think when he works. He denied ever being psychiatrically hospitalized and had never participated in mental health counseling. At that time, he was taking Clonazepam, Citalopram and Buspirone, which he reported helped to some degree. The claimant presented clean and neat and appropriately attired. He was cooperative throughout the interview and maintained adequate eye contact. The claimant was able to respond appropriately to questions and did not demonstrate any signs of distress (B4F/4). His speech was clear and 100% understandable. The claimant reported he felt depressed at times. However, at this evaluation, his mood was not depressed, and his affect was appropriate. He denied any suicidal ideation and denied ever attempting suicide. He assessed his mood difficulties to be a 5, on a 10-point scale with 10 being the most severe. He further reported periods of anxiety, when his heart races and he becomes hot and sweaty and gets headaches. The claimant stated he has four to five of these per week. No motoric or autonomic symptoms of anxiety were observed He denied any hallucinations but appeared somewhat paranoid, being others were judgment him and thinking the worst of him. The claimant was alert and oriented. He counted backwards from 20 to 1 in 11 seconds with no errors and performed a serial seven subtraction exercise. The claimant knew the name of the President but not the governor of Ohio. He was able to correctly perform a multiplication problem, calculate change and recalled two of three items on a simple registration task after five minutes. Memory appeared adequate (B4F/5). He appeared to be functioning in the borderline range of cognition. The claimant demonstrated adequate insight and judgment (B4F/6).
>
> At a hospital visit in September 2021, the claimant denied depression and anxiety (B9F/163). In late 2021, his clinical evaluations for depression were negative (B11F). At a primary care follow-up in October 2021, the claimant stated he did not think his medications were helping. However, he was only taking the Buspar twice a day instead of three times as prescribed (B17F/31). His medications were continued, noting he was to take Buspar three times a day (B17F/32-33).

3

At a primary care annual checkup in September 2022, the claimant requested a referral to a mental health provider stating he believed adjustments needed to be made in his medication. He reported using Klonopin twice daily but felt like he was often anxious (B17F/23). His medications were refilled, and he was given a referral list for mental health treatment (B17F/24).

At a neurology visit in October 2022, the claimant presented in no acute distress, was cooperative, and had no depression. He was noted to be only mildly anxious (B13F/456).

In late 2022, the claimant began treating with Coleman Health Services for his mental health. He underwent a mental status examination on October 20, 2022. He was cooperative, alert, and oriented. He had a full affect and thought process was logical. He denied suicidal ideation but reported difficulty focusing. (B14F/18-19). On November 1, 2022, he was seen by psychiatry as an initial visit, reporting he was currently taking Celexa, Buspar and Clonazepam, and that they had been prescribed for 12-15 years by his primary care provider. The claimant reported mild symptoms of depression and denied anxiety symptoms. Insight and judgment were fair He presented with fair grooming. He was oriented with fair insight and judgment. Cognition was unremarkable as was thought content, and he denied suicidal ideation. He was instructed to wean off Celexa and start Trintellix (B14F/20 & 65-70). Two weeks later, the claimant reported mild improvement with his depression since starting Trintellix and the medication was continued (B14F/72 & 77).

At a diagnostic assessment on December 28, 2022, the claimant reported feeling a little better. On examination, his speech was constricted. However, his thought process was logical and thought content unremarkable. He was cooperative with good eye contact and denied suicidal ideation. Memory impairment was reported, and he reported confusion. Insight and judgment were poor (B14F/1-17). In January 2023, he was provided another 28-day sample of Trintellix (B14F/25).

The claimant had a telephone follow-up with psychiatry on March 3, 2023, at which time he reported a bad mood and being depressed. His mental status examination continued to show normal eye contact and language, with logical thought process, normal associations, and thought content and cognition were unremarkable. He continued to deny suicidal ideation. He agreed to starting a trial of Lamictal for mood, to be titrated, and was continued on Trintellix (B14F/79- 83). However, due to increased dizziness associated with the higher dose of Lamictal, in May 2023 the claimant stated he had been cutting his dose of Lamictal in half (B14F/91-95). Through May 2023, the claimant continued to be provided samples of Trintellix and (B14F/30 & 40, 44, 50). At a psychiatry follow-up in June, the claimant reported an improved mood, stating he was not as depressed. He had gone back up to 150 mg. Lamictal because he felt better with that dose. He further reported that since starting Meclizine, his dizziness had improved and he was able to do more

4

> things and activities, which was easing his depression. His wife agreed he was doing better. His medications were continued (B14F/97—101). Thereafter, he continued to report he was doing well and had a normal mental status examination (B14F/104-110). Primary care records from October 2023 reveal that the claimant described his anxiety as stable. He presented in no apparent distress with a normal mood and affect and was alert and oriented His medications were refilled without change (B17F/14-19).
>
> At a video follow-up with psychiatry on February 5, 2024, the claimant reported minimal engagement in activities, fatigue, a lack of motivation and excessive sleep. He presented with fair/appropriate grooming, normal eye contact, and normal language. Associations were normal, thought content unremarkable, cognition unremarkable, and he had fair insight and judgment. He was continued on his mental health medications without change (B22F/1-10).

(ECF No. 8, PageID #: 1510–11, Tr. at 1476–7).

B.  **Opinion Evidence at Issue**

On January 12, 2021, Rayle presented for a psychological evaluation with Dr. Michael J. Wuebker. (ECF No. 8, Ex. No. B4F, PageID #: 525–30). Dr. Wuebker gave the following functional assessment:

> 1. Describe the claimant's abilities and limitations in understanding, remembering, and carrying out instructions. Mr. Rayle followed directions and instructions during this assessment. He noted no problems understanding his work tasks. However, he seemed to be functioning in the borderline range of intelligence. He would be expected to understand and apply instructions for one step workplace instructions. More complex work directions would appear difficult.
>
> 2. Describe the claimant's abilities and limitations in maintaining attention and concentration, and maintaining persistence and pace, and to perform simple tasks and multi-step tasks. Mr. Rayle related that he had some problems with these abilities at work, but would complete his work tasks. He maintained attention sufficient for questions to be answered during this interview. It would appear that the claimant would be capable of performing these skills appropriately in a work situation in line with his abilities.
>
> 3. Describe the claimant's abilities and limitations in responding appropriately to supervision and to co-workers in a work setting. Though preferring to stay by himself, Mr. Rayle interacted appropriately with co-workers and supervisors. He related cooperatively with this examiner. He exhibited no attitudes or behaviors that would indicate problems getting along.

5

      4. Describe the claimant's abilities and limitations in responding appropriately to work pressures in a work setting. Mr. Rayle would seem capable of responding mentally and emotionally appropriately to work setting stressors commensurate to his abilities. He did not report any work ending due to strictly psychiatric factors.

      5. The claimant gave no indication that he would be unable to manage any funds awarded.

(ECF No 8, PageID #: 530, Ex. B4F at 7). The ALJ found Dr. Wuebker's opinion somewhat persuasive.

### C. Vocational Expert Testimony

The ALJ presented several hypothetical situations to the vocational expert, each limiting the individual to understanding, remembering, and carrying out simple instructions that require little or no judgment in a short period of time to learn. For the hypothetical that the ALJ ultimately determined to be representative to Claimant's RFC, the vocational expert identified the following available jobs: 1) Packager [Shoe Packer], DOT #920.687-166, 1991 WL 688001; 2) Assembler, DOT #706.684-022, 1991 WL 679050; and Inspector, DOT #559.687-074, 1991 WL 638797. (ECF No. 8, PageID #: 1556–7, Tr. at 1522–3). Claimant's counsel asked the vocational expert how the number of jobs would be affected if the individual were limited to needing to be redirected and having the boss repeat instructions beyond the one-step instruction. The vocational expert responded that there would be no jobs "if the individual is going to be off-task for any reason 20 percent or more of a workday and not be able to complete a task." (*Id.* at PageID #: 1560, Tr. at 1525).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

2. The claimant has not engaged in substantial gainful activity since July 1, 2020, the alleged onset date (20 CFR 404.1571 et seq.).

6

(*Id.* at PageID #: 1498, Tr. at 1464).

> 3. The claimant has the following severe impairments: dizziness with atypical chest pain and some dyspnea; epilepsy; bilateral carotid stenosis; atherosclerosis; cervical stenosis with moderate degenerative intervertebral disc space narrowing; anxiety; depressive disorder; obstructive sleep apnea with nocturnal hypoxia; and obesity. (20 CFR 404.1520(c)).

(*Id.*).

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(*Id.* at PageID #: 1499, Tr. at 1465).

> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no climbing ladders, ropes or scaffolds, no climbing stairs and engaging in the remaining postural activities on an occasional basis in environments with no assembly line production dictated by an external source, no dangerous machinery, no extreme temperatures, no unprotected elevations, and no commercial driving. In addition, the claimant can understand and remember simple instructions that require little or no judgment and a short period of time to learn with frequent interaction with the public, co-workers, and supervisors.

(*Id.* at PageID #: 1502, Tr. at 1468).

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

(*Id.* at PageID #: 1515, Tr. at 1481).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2020, through the date of this decision (20 CFR 404.1520(g)).

(*Id.*).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 CFR § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20

8

CFR § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. The ALJ complied with SSR 96-8p in evaluating Dr. Wuebker's mental health opinion.[1]

Relying on SSR 96-8p: Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), Claimant argues that the ALJ failed to adequately explain her decision not to adopt Dr. Wuebker's opinion that Claimant should be limited to "one step workplace instructions" despite finding that Dr. Wuebker's opinion was

---

[1] The Court disagrees with the Commissioner's framing of the issue on appeal. (*See* ECF No. 12 at 4 ("Plaintiff's sole argument on appeal is that the ALJ did not comply with the prior Appeals Council remand order by failing to explain why Dr. Wuebker's opined limitation to 'one step workplace instructions' was not included in the RFC despite finding this opinion 'somewhat consistent and supported by the overall record'")). Rather, it appears that Claimant made this argument to support his argument that the ALJ erred in her analysis of Dr. Wuebker's opinion *in the same manner as before. See Fraze v. Comm'r of Soc. Sec. Admin.*, No. 5:21-CV-02300-JRA, 2022 WL 18863837, at *10 (N.D. Ohio Dec. 16, 2022), report and recommendation adopted sub nom. *See Fraze v. Comm'r of Soc. Sec.*, No. 5:21CV2300, 2023 WL 2202572 (N.D. Ohio Feb. 24, 2023) (collecting cases)("Federal courts lack consensus as to whether an ALJ's failure to follow Appeals Council directives in a remand order constitutes independent grounds for reversal, *absent some other error*.")(emphasis added). Nevertheless, the ALJ's decision differs with respect to Dr. Wuebker's opinion. Previously, the ALJ found Dr. Wuebker's opinion "generally persuasive because it is consistent with, and it is supported by the evidence of record." (ECF No. 8, PageID #: 1583, Tr. at1549). Whereas in the decision before this Court, the ALJ found Dr. Wuebker's opinion "somewhat persuasive" because it was "somewhat consistent with and supported by the record." (*Id.*, PageID #: 1512, Tr. at 1478). For the reasons detailed herein, the ALJ properly reviewed and explained her analysis of Dr. Wuebker's opinion, thereby complying with the Appeals Council's remand order.

"somewhat consistent and supported by the overall record." (ECF No. 1 at 4-5); SSR 96-8p, Narrative Discussion Requirements. Under SSR 96-8p, if the RFC conflicts with a medical opinion, the ALJ must explain why the medical opinion was not adopted. *Id*. The Commissioner argues that the ALJ adequately explained the decision not to include the limitation by explaining that Dr. Wuebker's diagnosis of borderline intellectual functioning – and the resulting limitation to one-step instructions – was not supported by the record.

The ALJ summarized Dr. Wuebker's opinions as follows:

> Dr. Wuebker opined that the claimant could understand and apply instructions for one step workplace instructions, had no limitation in maintaining attention, concentration, persistence and pace, no limitation in interacting with others, and no limitation in adapting (B4F).

The ALJ found Dr. Wuebker's opinion somewhat persuasive and explained:

> This opinion is somewhat consistent with and supported by the overall record. Specifically, while the overall record does not support a diagnosis of borderline intellectual functioning, as offered by Dr. Wuebker (see discussion above at finding 3), I have considered the claimant's education history, specifically his receipt of special education services (B1F). This, further considering examination findings consistently showing no cognitive impairment (see, e.g., B14F/68, 74 & B22F/8), supports a finding that the claimant can understand and remember simple instructions that require little or no judgment and a short period of time to learn. Conversely, I find that, consistent with a moderate limitation in interacting with others, the claimant can frequently interact with the public, co-workers, and supervisors. Further, that, although not fully supported by the record, given the claimant's intermittent periods of dizziness and lightheadedness, that he is properly limited to no assembly line production dictated by an external source. The remainder of the opinion is consistent with and supported by the overall record to the extent that no additional limitations in adapting are necessary. In making these findings, I note that this was a one-time examination and does not represent the claimant's mental status on a longitudinal basis for the duration of the period under review. Accordingly, overall, this opinion is somewhat persuasive.

(ECF No. 8, PageID #: 1511-2, Tr. at 1477–8). The discussion at "finding 3" referenced by the ALJ stated:

> The record does show a diagnosis of Borderline Intellectual Functioning offered by the consultative examiner (B4F); however, this is not supported by the objective

10

> evidence. School records show that the claimant underwent IQ testing as a teen, on which he scored a full-scale IQ of 83 (B1F/4). School records indicate that the claimant had been given several psychological evaluations since entering school, with IQ scores consistently being in the low average range (B1F/5). The record does not otherwise show evidence of intellectual impairment. Rather, the claimant's mental health examinations consistently show his cognition as unremarkable (see, e.g., B14F/68, 74 & B22F/8). An impairment must be established by objective medical evidence from an acceptable medical source. A medically determinable impairment may not be established solely on the basis of a claimant's allegations regarding symptoms, nor solely on a diagnosis or on a medical opinion (20 CFR 404.1521). Therefore, in the absence of laboratory or clinical findings or medical observations validating a diagnosis, the existence of a learning disorder and/or borderline intellectual functioning cannot be medically determined.

(*Id*. at PageID #: 1498, Tr. at 1464).

Social Security Ruling 96-8p states, "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Here, the ALJ's decision complied with the requirements of SSR 96-8p.

Although the ALJ found Dr. Wuebker's opinion "somewhat persuasive", she did not include a limitation to one-step instructions in Claimant's RFC. The ALJ acknowledged the parts of the record that showed evidence of Claimant's borderline intellectual functioning – i.e., his school records showing a full-scale IQ of 83 at 14 years old and other IQ tests showing low average intelligence. The ALJ also discussed that the mental health records consistently showed unremarkable cognition and noted the lack of laboratory findings, clinical findings and medical observations validating the diagnosis. After weighing the record evidence, rather than including Dr. Wuebker's limitation for one-step instructions, the ALJ limited Claimant to "simple instructions that require little or no judgment and a short period of time to learn[.]" (ECF No. 8, PageID #: 1502, Tr. at 1468). The ALJ explained that she considered Claimant's history of special education in school in determining that some limitation was necessary – simply not the limitation

11

opined by Dr. Wuebker. In so finding, the ALJ specifically set forth reasons for not including a limitation to one-step workplace instructions in the RFC (Tr. 1477-78). Claimant's attack on the ALJ's opinion asks this Court to reweigh the evidence. "But the Court does not reweigh evidence when reviewing an ALJ's determination." *McQuade v. Comm'r of Soc. Sec.*, No. 1:21CV834, 2022 WL 4375984, at *2 (N.D. Ohio Sept. 22, 2022). Accordingly, the ALJ adequately explained why she found that Claimant could perform simple instructions and did not include Dr. Wuebker's one-step limitation.[2]

## VI. Recommendation

Based on the above, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: September 29, 2025

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within 14 days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).

---

[2] Claimant argues that "wording is important" in an attempt to distinguish a limitation of one-step instructions from a limitation of simple instructions. (*See* ECF No. 10 at 6–8 (citing *Rodriguez v. Comm'r of Soc. Sec.*, No. 3:11-cv-398, 2012 WL 380275, at *12 (N.D. Ohio Feb. 6, 2012)). Commissioner does not argue that these are the same limitation, and the Court does not find that the limitations are the same. Instead, as explained above, the Court finds that substantial evidence supports the ALJ's decision to include a limitation to simple instructions rather than Dr. Wuebker's opined one-step instruction.